# UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JULIO OTERO**                                                      **CIVIL ACTION**

**versus**                                                              **NO. 12-1332**

**STATE OF LOUISIANA**                                      **SECTION: "F" (1)**

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Julio Otero, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On August 8, 2007, he was convicted of armed robbery under Louisiana law.[1]  On September 19, 2007, he was sentenced on that conviction to a term of thirty-five years imprisonment without benefit of probation, parole, or suspension of sentence.  On that same date, he was also sentenced to a consecutive term of five years imprisonment without benefit of

---

[1] State Rec., Vol. II of VIII, trial transcript, p. 136; State Rec., Vol. I of VIII, minute entry dated August 8, 2007; State Rec., Vol. I of VIII, jury verdict form.

probation, parole, or suspension of sentence pursuant to the enhancement provision of La. Rev. Stat. Ann. § 14:64.3 based on his use of a firearm to commit the underlying crime.[2]  On December 16, 2008, the Louisiana Fifth Circuit Court of Appeal affirmed his conviction, vacated the sentence enhancement under § 14:64.3, and remanded the case for resentencing.[3]  The Louisiana Supreme Court then denied his related writ application on September 25, 2009.[4]

While those proceedings were ongoing, the state charged petitioner as a multiple offender.[5]  On April 8, 2009, state district court adjudicated petitioner a third offender and resentenced him as such on the armed robbery conviction to a term of sixty-six years imprisonment without benefit of probation, parole, or suspension of sentence.[6]  The Louisiana Fifth Circuit Court of Appeal affirmed that habitual offender adjudication and sentence on January 26, 2010,[7] and the Louisiana Supreme Court denied the related writ application on September 24, 2010.[8]

_____

[2] State Rec., Vol. II of VIII, transcript of September 19, 2007.

[3] State v. Otero, 3 So.3d 34 (La. App. 5th Cir. 2008) (No. 08-KA-188); State Rec., Vol. VIII of VIII.

[4] State v. Otero, 18 So.3d 80 (La. 2009) (No. 2009-K-0099); State Rec., Vol. VIII of VIII.

[5] State Rec., Vol. IV of VIII, multiple bill of information.

[6] State Rec., Vol. IV of VIII, transcript of April 8, 2009.

[7] State v. Otero, 31 So.3d 1125 (La. App. 5th Cir. 2010) (No. 09-KA-468).

[8] State v. Otero, No. 2010-KO-0489 (La. 2010) (No. 2010-KO-0489); State Rec., Vol. VIII of VIII.

On or about March 9, 2011, petitioner filed an application for post-conviction relief with the state district court.[9]  That application was denied on June 23, 2011.[10]  His related writ applications were then likewise denied by the Louisiana Fifth Circuit Court of Appeal on September 13, 2011,[11] and by the Louisiana Supreme Court on September 12, 2012.[12]

In the interim, in May of 2012, these federal *habeas corpus* proceedings were commenced by the filing of both *pro se* and counseled petitions.[13]  Because the proceedings in state court were still pending at that time, petitioner initially requested that these federal proceedings be stayed;[14] however, once the state court proceedings were concluded, that request was withdrawn.[15]

## I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas

---

[9] State Rec., Vol. VII of VIII.

[10]  State Rec., Vol. VII of VIII, Order dated June 23, 2011.

[11]  Otero v. Cain, No. 11-KH-773 (La. App. 5th Cir. Sept. 13, 2011); State Rec., Vol. VII of VIII.

[12]  State *ex rel.* Otero v. State, 98 So.3d 813 (La. 2012) (No. 2012-KH-0429).

[13]  Rec. Docs. 1 and 7.

[14]  Rec. Doc. 7.

[15]  Rec. Docs. 14 and 15.

'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."
Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme

- 4 -

> Court and nevertheless arrives at a result different from [United
> States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has explained:

> [A] state-court decision can involve an "unreasonable application" of
> this Court's clearly established precedent in two ways.  First, a
> state-court decision involves an unreasonable application of this
> Court's precedent if the state court identifies the correct governing
> legal rule from this Court's cases but unreasonably applies it to the
> facts of the particular state prisoner's case.  Second, a state-court
> decision also involves an unreasonable application of this Court's
> precedent if the state court either unreasonably extends a legal
> principle from our precedent to a new context where it should not
> apply or unreasonably refuses to extend that principle to a new
> context where it should apply.

Williams v. Taylor, 529 U.S. 362, 407 (2000).  The Supreme Court has noted that the focus of this inquiry "is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams that an unreasonable application is different from an incorrect one."  Bell, 535 U.S. at 694; see also Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."), cert. denied, 132 S.Ct. 1537 (2012).

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

- 5 -

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011) (citations omitted; emphasis added); see also

Renico v. Lett, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants – and federal courts –

from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of

state courts.").

## II. Facts

On the first direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized

the facts of this case as follows:

> The defendant was charged in connection with the robbery of the Omni Bank located at 5249 Veterans Memorial Boulevard in Metairie. Prior to trial the defendant filed a motion to suppress certain statements that he had made to the police. At the June 20, 2007 hearing on the motion, Sergeant John Carroll of the Jefferson Parish Police Department testified that he had participated in the investigation of the Omni Bank robbery. According to his testimony, Carroll first met the defendant after the defendant was arrested in Orleans Parish on an unrelated weapons charge and transported to the D.E.A. office in Jefferson Parish. Sgt. Carroll spoke to the defendant

after advising him of his <u>Miranda</u> rights.  This initial statement was not recorded, and was interrupted when the parties were asked to leave the premises due to a building inspection taking place at that time.  Sgt. Carroll testified that the defendant was thereafter moved back to Orleans Parish for booking on the weapons charge.

Carroll further testified that after interviewing the defendant, the investigators interviewed the defendant's fiancé and two co-defendants, all of whom identified the defendant on photographs obtained from the bank's surveillance cameras.  Sgt. Carroll then transported the defendant from the Orleans Parish jail to the detective bureau in Jefferson Parish after the defendant agreed to give another statement since his previous statement had been interrupted and was incomplete.  Detective David Mascaro testified that he and Sgt. Carroll transported the defendant pursuant to an arrest warrant the day after his previous statement had been interrupted.  Prior to giving a statement, the defendant signed a second waiver of his <u>Miranda</u> rights.  During the interview, the detectives showed the defendant photographs obtained from the bank's surveillance cameras, and asked the defendant if he could identify the individual in the pictures.  After several hours of questioning, the defendant confessed to robbing the Omni Bank.

The defendant's motion to suppress was denied on June 20, 2007, and trial commenced on August 7, 2007.  Three bank employees who were working on the day of the robbery testified at trial.  Deirdre Bates, the assistant manager, recalled greeting the defendant as he entered the bank.  She testified that he did not respond to her greeting, and that as she moved through the building, she realized that the defendant was following her.  She observed the defendant lift his shirt and pull a gun out from the inside of his pants.  He forced her to the floor, and ordered the remaining patrons and employees to the floor as well.

April York, a bank teller, testified that after the defendant displayed a gun, he jumped over the teller counter and forcibly pulled her out of the way.  He then took money out of her teller drawer, jumped back over the counter, and fled the building through the front door.

Jane Ainsworth, the manager of the branch, testified that she was working in her office when the robbery occurred.  She eventually realized what was happening when she heard the defendant screaming at a teller.  She moved towards the floor and observed the defendant jump over the counter and exit the bank.  After the robbery

was over, Ainsworth locked the door, called the police, and began
filling out theft forms in accordance with Omni procedure.

The defendant called no witnesses, nor did he testify on his
own behalf.[16]

### III.  Petitioner's Claims

### A. Denial of Motions to Suppress

Petitioner first argues that the state court erred in denying the defense motions to

suppress the identifications and statements.  In the first direct appeal, the Louisiana Fifth Circuit

Court of Appeal rejected that claim, holding:

> In his first assignment, the defendant argues that the trial
> court erred in denying the motion to suppress the identifications and
> statements, as they were the "fruits of an illegal arrest."  Specifically,
> the defendant claims that he was arrested without probable cause in
> Orleans Parish, and that any statement given thereafter was therefore
> illegal and inadmissible at trial.
>
> Statements made by a defendant during an allegedly illegal
> detention are inadmissible if they are the product of illegal detention
> and not the result of an independent act of free will.  State v. Fisher,
> 97-1133 (La. 9/9/98), 720 So.2d 1179.  The defendant has the burden
> of proving "the ground of his motion, except that the State shall have
> the burden of proving the admissibility of a purported confession or
> statement by the defendant or or of any evidence seized without a
> warrant."  La. C. Cr. P. art. 703(D).  The defendant also bears the
> burden of asserting the basis for his motion to suppress in order to
> give the State adequate notice so that it may present evidence and
> address the issue.  State v. Jackson, 04-1388 (La.App. 5th Cir.
> 5/31/05), 904 So.2d 907, 911, writ denied, 05-1740 (La. 2/10/06),
> 924 So.2d 162.  Evidence which is collected in violation of a
> defendant's constitutional rights must be excluded at trial subject to
> several exceptions.  See, e.g., Mapp v. Ohio, 367 U.S. 643, 81 S.Ct.
> 1684, 6 L.Ed.2d 1081 (1961).  A trial court's decision to deny a
> motion to suppress is afforded great weight, and will not be disturbed
> unless the preponderance of the evidence clearly favors suppression.

---

[16]  Otero, 3 So.3d at 36-37; State Rec., Vol. VIII of VIII.

State v. Williams, 98-1006 (La.App. 5th Cir. 3/30/99), 735 So.2d 62, writ denied, 99-1077 (La. 9/24/99), 747 So.2d 1118.

There is no evidence in the record regarding the legality of the defendant's initial arrest in Orleans Parish. Furthermore, there is no evidence in the trial record that the defendant gave any statement at the initial interview prior to being interrupted by the building inspection. The record does contain evidence that the defendant was first advised of his Miranda rights and that he voluntarily waived those rights prior to giving any statement to Sgt. Carroll in Jefferson Parish the day after the Orleans Parish arrest. There is also evidence that the defendant's transport from Orleans Parish prison to Jefferson Parish was based on an arrest warrant, though there is conflicting testimony whether the defendant went willingly. As such, it is not possible to deduce whether the defendant's Orleans Parish arrest was based on probable cause. Moreover, since the defendant was transported to Jefferson Parish pursuant to a valid arrest warrant, his argument that the Orleans arrest was illegal is moot.

The defendant's confession and identification of himself from the bank's surveillance photos were admissible because they were given freely and voluntarily and not under duress or intimidation. Based on the record, we find that the trial court was correct in finding that the defendant's statement was freely and voluntarily given while he was under custody. Accordingly, this assignment of error is without merit.[17]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[18]

To the extent that petitioner is alleging that his statements should have been suppressed because they followed an illegal arrest, that claim arises under the Fourth Amendment. See Dunaway v. New York, 442 U.S. 200 (1979); Jones v. Johnson, 171 F.3d 270, 277-78 (5th Cir. 1999). However, as the state correctly notes in its response in this proceeding, such Fourth

---

[17] State v. Otero, 3 So.3d 34, 37-38 (La. App. 5th Cir. 2008) (No. 08-KA-188); State Rec., Vol. VIII of VIII.

[18] State v. Otero, 18 So.3d 80 (La. 2009) (No. 2009-K-0099); State Rec., Vol. VIII of VIII.

Amendment claims are barred in a *habeas corpus* proceeding by <u>Stone v. Powell</u>, 428 U.S. 465 (1976).  In <u>Stone</u>, the United States Supreme Court held:  "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at trial."  <u>Id.</u> at 494 (footnote omitted); <u>see also</u> <u>Janecka v. Cockrell</u>, 301 F.3d 316, 320 (5th Cir. 2002).  The <u>Stone</u> bar applies even if the state court rulings regarding the Fourth Amendment claims were in fact erroneous.  <u>Swicegood v. Alabama</u>, 577 F.2d 1322, 1324 (5th Cir. 1978).

   In the instant case, petitioner asserted a Fourth Amendment claim in the state district court, where he was afforded an evidentiary hearing,[19] and he challenged the denial of that claim in both the Louisiana Fifth Circuit Court of Appeal[20] and the Louisiana Supreme Court.[21]  Because he was afforded a full and fair opportunity to litigate his Fourth Amendment claim in state courts, <u>Stone</u> bars this Court from considering that claim.  <u>Cardwell v. Taylor</u>, 461 U.S. 571 (1983); <u>Jones</u>, 171 F.3d at 278; <u>Davis v. Cain</u>, Civ. Action No. 07-6389, 2008 WL 5191912, at *18 (E.D. La. Dec. 11, 2008).

   To the extent that petitioner is asserting a *Fifth* Amendment claim that his statement was *involuntary*, the state argues that such a claim is procedurally barred because petitioner failed

---

[19]  State Rec., Vol. I of VIII, transcript of June 20, 2007.

[20]  State Rec., Vol. II of VIII, appeal brief, pp. 8-12.

[21]  State Rec., Vol. VIII of VIII, writ application in No. 2009-K-0099, pp. 6-9.

to exhaust his state court remedies with respect to the claim.[22]  For the following reasons, the state is correct.

Pursuant to 28 U.S.C. § 2254(b)(1)(A), a petitioner normally must first exhaust his remedies in state court before seeking *habeas corpus* relief from the federal courts.  "To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts."  Wilder v. Cockrell, 274 F.3d 255, 259 (5th Cir. 2001) (internal quotation marks omitted).  Generally, the federal exhaustion requirement is satisfied only when the grounds urged in a federal petition were previously presented to the state's *highest* court in a procedurally proper manner according to state court rules.  Dupuy v. Butler, 837 F.2d 699, 702 (5th Cir. 1988).

Although petitioner asserted a Fifth Amendment claim in the trial court,[23] he did not pursue that claim in the Louisiana Supreme Court.  Rather, he argued his suppression claim to the Louisiana Supreme Court as only a Fourth Amendment violation.[24]  Therefore, petitioner's Fifth Amendment claim is clearly unexhausted.  As a result, as the state correctly argues, that Fifth Amendment claim is now defaulted because any new attempt to bring such a claim in state court would clearly be barred under the state's procedural rules.[25]

---

[22]  The Court notes that the Stone prohibition applies only to claims arising under the Fourth Amendment.  It does not, for example, extend to a petitioner's claim that his conviction rests on statements obtained in violation of the Fifth Amendment and Miranda v. Arizona, 384 U.S. 436 (1966).  Withrow v. Williams, 507 U.S. 680 (1993).

[23]  See State Rec., Vol. I of VIII, Motion to Suppress the Confession.

[24]  State Rec., Vol. VIII of VIII, writ application in No. 2009-K-0099, pp. 6-9.

[25]  For example, any new post-conviction application asserting such a claim would be barred by La.C.Cr.P. arts. 930.4(C) ("If the application alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court may deny relief."), 930.4(E) ("A successive application may be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application."), and 930.8(A) (establishing a two-year statute of limitations for state post-conviction applications).

Of course, in limited circumstances, a *habeas* petitioner may still be afforded federal review of a defaulted claim. Specifically, this Court may review a defaulted claim if the petitioner demonstrates either (1) the existence of "cause" *and* "prejudice" or (2) that a failure to address the claim will result in a "fundamental miscarriage of justice." See, e.g., Bagwell v. Dretke, 372 F.3d 748, 756-57 (5th Cir. 2004). Here, petitioner has demonstrated neither.

"To establish cause for a procedural default, there must be something *external* to the petitioner, something that cannot fairly be attributed to him." Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted) (emphasis in original). Objective factors that can constitute cause include interference by officials that makes compliance with the state procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel, and ineffective assistance of counsel. Romero v. Collins, 961 F.2d 1181, 1183 (5th Cir. 1992). Here, petitioner has made no effort to establish cause for the failure to properly pursue the defaulted Fifth Amendment claim. "Absent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice." Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996).

Because petitioner has not met the "cause and prejudice" test, this Court must determine whether the application of the procedural bar would result in a fundamental miscarriage of justice. In order to establish that there would be a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him. Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which

he was convicted."  Finley v. Johnson, 243 F.3d 215, 220 (5th Cir. 2001) (citations omitted).  The

United States Fifth Circuit Court of Appeals has held:

> To demonstrate actual innocence, it is necessary that the petitioner
> show that it is more likely than not that no reasonable juror would
> have found petitioner guilty beyond a reasonable doubt ... in light of
> all of the evidence, including that alleged to have been illegally
> admitted (but with due regard to any unreliability of it) and evidence
> tenably claimed to have been wrongfully excluded or to have become
> available only after trial.

Lucas v. Johnson, 132 F.3d 1069, 1077 (5th Cir. 1998) (quotation marks and citations omitted).

Applying that standard, the Court finds that petitioner has not made a persuasive showing that he

is actually innocent in the instant case.  The evidence of petitioner's guilt, including his

identification by multiple eyewitnesses and his own confession, was overwhelming.  Therefore, he

has not demonstrated that any miscarriage of justice will result from this Court's failure to consider

his defaulted Fifth Amendment claim.  Accordingly, that claim is procedurally barred in this federal

court.

### B.  Prosecutorial Misconduct

Petitioner next argues that the trial court erred in denying petitioner's motion for a

mistrial based on improper comments made by the prosecutor.  On direct appeal, the Louisiana Fifth

Circuit Court of Appeal denied that claim, holding:

> [T]he defendant argues that the trial court erred in failing to grant a
> motion for mistrial based on improper comments by the prosecutor
> during his closing argument. It is well established that closing
> arguments should be restricted to the evidence admitted or lack
> thereof, conclusions of fact that may be drawn therefrom, and to the
> law applicable to the case. State v. Vincent, 07-239 (La.App. 5th Cir.
> 12/27/07), 978 So.2d 967, 975.   The state's rebuttal should be
> confined to answering the defendant's argument, but prosecutors are

generally allowed considerable latitude when making closing arguments.  Id.  A conviction will not be reversed due to improper remarks during closing unless the reviewing court is thoroughly convinced that the remarks influenced the jury and contributed to the verdict.  Id. at 976.

A trial court is authorized to correct prejudicial remarks by ordering a mistrial or admonishing the jury, at the defendant's request.  State v. Taylor, 07-93 (La.App. 5th Cir. 11/27/07), 973 So.2d 83.  However, "much credit should be accorded to the good sense and fair-mindedness of the jurors who have seen the evidence and heard the arguments, and have been instructed repeatedly by the trial judge that arguments of counsel are not evidence."  State v. Martin, 93-0285 (La. 10/17/94), 645 So.2d 190, 200.

The following statement by the prosecutor is the subject of the defendant's complaint:

> And what about fingerprints?  No, you didn't hear anything about fingerprints.  Fingerprints aren't found that easily.  We, granted, could put on a witness to testify about fingerprints, to explain how fingerprints can be located, aren't always located [sic] any little smudge means that there's no usable fingerprint.  If fingerprints were found and weren't the defendant's, though the Defense doesn't have any duty to call witnesses or experts, they could have done that, also.  So, if there were fingerprints found that did not belong to the defendant, the Defense could have called a witness to show you that.

The defendant argues that the prosecutor's comments regarding the defendant's presumption of innocence and the necessity for him to prove his innocence essentially shifted the burden of proof to the defendant to prove his innocence.  However, the defendant fails to acknowledge the context in which the prosecutor made this statement.  The prosecutor was rebutting the defendant's closing argument wherein defense counsel raised the issue of the lack of fingerprint evidence.  Furthermore, the prosecutor acknowledged in his closing that the defendant was not obligated to call any witnesses.  The trial court also instructed the jury regarding the State's obligation to put on evidence to prove the defendant's guilt.  Based on the foregoing, we do not find that the prosecutor's closing arguments rendered the trial fundamentally unfair so as to warrant a mistrial.

> Nonetheless, we find it appropriate to remind prosecutors that they would be well advised to tread lightly with respect to a defendant's failure to call witnesses.[26]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[27]

To the extent that petitioner is simply arguing that the state courts misapplied the state laws concerning the granting of mistrials, this Court cannot grant relief on that basis. "Even if the court's refusal to declare a mistrial was a violation of Louisiana law, we, as a federal habeas court, are without authority to correct a simple misapplication of state law; we may intervene only to correct errors of constitutional significance." Smith v. Whitley, No. 93-03208, 1994 WL 83777, at *1 (5th Cir. Mar. 3, 1994); see also Holley v. Texas, No. 98-51222, 1999 WL 767117 (5th Cir. Sept. 3, 1999); Smith v. Travis, Civ. Action No. 08-4627, 2009 WL 1704335, at *9 (E.D. La. June 16, 2009); Williams v. Cain, Civ. Action Nos. 06-0224 and 06-0344, 2009 WL 1269282, at *25 (E.D. La. May 7, 2009), aff'd, 359 Fed. App'x 462 (5th Cir. 2009). "[I]t is not the province of a federal *habeas* court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); see also Charles v. Thaler, 629 F.3d 494, 500-01 (5th Cir. 2011) ("Under § 2254, federal habeas courts sit to review state court misapplications of federal law. A federal court lacks authority to rule that a state court incorrectly interpreted its own law. When, as here, a state court's legal conclusions are affirmed by the highest court in that state, those conclusions *are* state law."). Simply put, a federal *habeas* court does "not sit as a 'super' state

---

[26] Otero, 3 So.3d at 38; State Rec., Vol. VIII of VIII.

[27] State v. Otero, 18 So.3d 80 (La. 2009) (No. 2009-K-0099); State Rec., Vol. VIII of VIII.

supreme court" to review alleged errors of state law.  Smith v. McCotter, 786 F.2d 697, 700 (5th Cir. 1986); see also Dickerson v. Guste, 932 F.2d 1142, 1145 (5th Cir. 1991).

To the extent that petitioner is in fact claiming that the comments violated his federal constitutional right to a fair trial, the claim fares no better.[28]  As the United States Fifth Circuit Court of Appeals has explained:

> Even if ... [a] prosecutor's remarks [are] improper, prosecutorial remarks are a sufficient ground for habeas relief only if they are so prejudicial that they render the trial fundamentally unfair.  Such unfairness exists only if the prosecutor's remarks evince either persistent and pronounced misconduct or the evidence was so insubstantial that (in probability) but for the remarks no conviction would have occurred.

Harris v. Cockrell, 313 F.3d 238, 245 (5th Cir. 2002) (internal quotation marks, ellipsis, and footnote omitted); see also Jones v. Butler, 864 F.2d 348, 356 (5th Cir. 1989).  In other words, a prosecutor's remarks warrant *habeas* relief only if they were "a crucial, critical, highly significant factor upon which the jury based its verdict."  Harris, 313 F.3d at 245.

In the instant case, even if the comments at issue were improper, a proposition which is doubtful,[29] they could hardly be categorized as egregious, and there is no evidence that they were

---

[28]   The state argues that petitioner asserted this claim on only state law grounds in the state courts and so any federal due process claim is procedurally barred.  Rec. Doc. 24, p. 4.  However, this Court declines to reach that issue because the claim clearly fails on the merits.  See Glover v. Hargett, 56 F.3d 682, 684 (5th Cir. 1995); Wiley v. Puckett, 969 F.2d 86, 104 (5th Cir. 1992); George v. Cain, Civ. Action No. 08-5022, 2011 WL 1832823, at *5 n.42 (E.D. La. May 13, 2011); Corzo v. Murphy, Civ. Action No. 07-7409, 2008 WL 3347394, at *1 n.5 (E.D. La. July 30, 2008); Lee v. Cain, Civ. Action No. 06-9669, 2007 WL 2751210, at *9 (E.D. La. Sept. 18, 2007).

[29]   See, e.g., Thomas v. Deeds, No. 92-15927, 1993 WL 230165 (9th Cir. June 25, 1993) ("The prosecutor's statement that the defense had failed to present any fingerprint evidence was an invited response to defense counsel's claim that the prosecution had failed to present such evidence, not a comment on defendant's failure to testify.").

made in bad faith in a deliberate attempt to taint the proceedings or prejudice the jury.  Further, and most importantly, when the comments are considered in context, it simply cannot be reasonably said that they played a significant factor in the jury's verdict, especially considering the jury instructions[30] and the overwhelming evidence of guilt admitted at trial.  Therefore, this claim should be rejected.

C.  Due Process/Double Jeopardy

Petitioner also claims that the decision to enhance of his sentence pursuant to La. Rev. Stat. Ann. § 14:64.3 violated his right to due process because the determination was not made by a jury and subjected him to double jeopardy.  For the following reasons, that claim is moot.

As noted, on September 19, 2007, petitioner was sentenced to a term of thirty-five years imprisonment on the armed robbery conviction, as well to a consecutive term of five years imprisonment under the enhancement provision of La. Rev. Stat. Ann. § 14:64.3 based on his use of a firearm to commit the underlying crime.[31]  However, on December 16, 2008, the Louisiana Fifth

---

[30]  For example, the jurors were instructed:

> The defendant is not required to prove that he/she is innocent.  Thus the defendant begins the trial with a clean slate.
> The burden is upon the State to prove the defendant's guilt beyond a reasonable doubt.  In considering the evidence, you must give the defendant the benefit of every doubt arising out of the evidence or out of the lack of evidence.

State Rec., Vol. I of VIII, jury instructions, p. 1.  The jurors were also specifically instructed: "The defendant is not required by law to call any witnesses or produce any evidence."  State Rec., Vol. I of VIII, jury instructions, p. 3.

[31]  State Rec., Vol. II of VIII, transcript of September 19, 2007.

Circuit Court of Appeal affirmed his conviction, vacated the sentence enhancement under § 14:64.3, and remanded the case for resentencing.[32]

In reviewing the record, the undersigned found no indication that petitioner was ever resentenced under § 14:64.3. Therefore, the parties were instructed to submit supplemental briefs addressing the issue of whether petitioner was in fact resentenced under § 14:64.3 and, if not, whether this claim was now moot.[33] Petitioner filed no supplemental brief. However, in its supplemental brief,[34] the state conceded that no such resentencing occurred. The state noted that the sentence enhancement under § 14:64.3 was abandoned on remand. Although an enhanced sentence was again imposed on remand, that enhancement was based on *§ 15:529.1* due to petitioner's status as a *habitual offender*, not on *§ 14:64.3* due to his *use of a firearm* in the instant crime. In light of that fact, the state argues, and this Court finds, that this claim challenging petitioner's original sentence enhancement under § 14:64.3 is moot because that sentence was vacated on direct appeal and never reimposed.

---

[32] <u>State v. Otero</u>, 3 So.3d 34 (La. App. 5th Cir. 2008) (No. 08-KA-188); State Rec., Vol. VIII of VIII.

[33] Rec. Doc. 25.

[34] Rec. Doc. 26.

<u>D.  Ineffective Assistance of Counsel</u>

Petitioner next argues that his trial counsel was ineffective.[35]  The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel.  Specifically, a petitioner seeking relief must demonstrate both that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  <u>Strickland v. Washington</u>, 466 U.S. 668, 697 (1984).  A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  <u>Jernigan v. Collins</u>, 980 F.2d 292, 296 (5th Cir. 1993); <u>see also</u> <u>Clark v. Johnson</u>, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.  <u>Strickland</u>, 466 U.S. at 697.

To prevail on the deficiency prong of the <u>Strickland</u> test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  <u>See</u> <u>Styron v. Johnson</u>, 262 F.3d 438, 450 (5th Cir. 2001).   "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  <u>Little v. Johnson</u>, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  <u>See</u> <u>Strickland</u>, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 371 (1993)

---

[35]  The state argues that this claim is procedurally barred because it was not properly presented to the Louisiana Supreme Court.  Rec. Doc. 24, pp. 13-14.  Again, however, this Court pretermits a finding on that issue, in that the claim clearly fails on the merits.  <u>See</u> *supra* note 28.

(quoting <u>Strickland</u>, 466 U.S. at 690).  A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  <u>See</u> <u>Crockett v. McCotter</u>, 796 F.2d 787, 791 (5th Cir. 1986); <u>Mattheson v. King</u>, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prevail on the prejudice prong of the <u>Strickland</u> test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Strickland</u>, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  <u>Id</u>.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  <u>Crockett</u>, 796 F.2d at 793.

Because the state courts rejected petitioner's ineffective assistance of counsel claims on the merits and because such claims present a mixed question of law and fact, this Court must defer to the state court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); <u>Moore v. Cockrell</u>, 313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the United States Supreme Court has explained that, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the <u>Strickland</u> standard was unreasonable.  This is different from asking whether defense counsel's performance fell below <u>Strickland</u>'s standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a <u>Strickland</u> claim on direct review of a criminal conviction in a United

States district court.  Under AEDPA, though, it is a necessary premise that the two questions are different.  For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law.  A state court must be granted a deference and latitude that are not in operation when the case involves review under the <u>Strickland</u> standard itself.

A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.  <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004).  And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  <u>Ibid</u>.  "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."  <u>Knowles v. Mirzayance</u>, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

<u>Harrington v. Richter</u>, 131 S.Ct. 770, 785-86 (2011) (citation omitted).  The Supreme Court then explained:

Surmounting <u>Strickland</u>'s high bar is never an easy task.  An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the <u>Strickland</u> standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve.  Even under *de novo* review, the standard for judging counsel's representation is a most deferential one.  Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence.  The question is whether an attorney's representation amounted to incompetence under prevailing professional norms,  not whether it deviated from best practices or most common custom.

Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. *The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and*

> *when the two apply in tandem, review is doubly so.* The <u>Strickland</u>
> standard is a general one, so the range of reasonable applications is
> substantial. Federal habeas courts must guard against the danger of
> equating unreasonableness under <u>Strickland</u> with unreasonableness
> under § 2254(d). *When § 2254(d) applies, the question is not
> whether counsel's actions were reasonable. The question is whether
> there is any reasonable argument that counsel satisfied <u>Strickland</u>'s
> deferential standard.*

<u>Id</u>. at 788 (citations omitted; emphasis added). This Court finds that, under those stringently

deferential standards, it simply cannot be said that relief is warranted in the instant case.

     In the state post-conviction proceedings, the district court denied petitioner's claims,

holding:

> It is clear that the petitioner has a Sixth Amendment right to effective
> legal counsel. Under the well-known standard set out in <u>Strickland
> v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984),
> and <u>State v. Washington</u>, 491 So.2d 1337 (La. 1986), a conviction
> must be reversed if the defendant proves (1) that counsel's
> performance fell below an objective standard of reasonableness under
> prevailing professional norms, and (2) counsel's inadequate
> performance prejudiced defendant to the extent that the trial was
> rendered unfair and the verdict suspect. <u>State v. Legrand</u>, 2002-1462
> (La. 12/3/03), 864 So.2d 89.
>
>      To be successful in arguing a claim of ineffective assistance
> of counsel, a post-conviction petitioner must prove deficient
> performance to the point that counsel is not functioning as counsel
> within the meaning of the Sixth Amendment. A petitioner must also
> prove actual prejudice to the point that the results of the trial cannot
> be trusted. It is absolutely essential that both prongs of the <u>Strickland</u>
> test must be established before relief will be granted by a reviewing
> court.
>
>      Furthermore, there is a strong presumption that counsel's
> performance is within the wide range of effective representation.
> Effective counsel, however, does not mean errorless counsel and the
> reviewing court does not judge counsel's performance with the
> distorting benefits of hindsight, but rather determines whether
> counsel was reasonably likely to render effective assistance. <u>State v.
> Soler</u>, 93-1042 (La. App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075.

Mindful of controlling federal and state jurisprudence, this court now turns to the specific claims of ineffective assistance made in the instant application and argued in the petitioner's memorandum in support, as well as the state's response.

**First**, petitioner claims that trial counsel was ineffective in failing to pursue an insanity defense.  As the State points out, defense counsel considered defendant competent to stand trial, and stated to the court, "While we would suggest he does have mental deficits there is no bias to the standard of either a legal defense or competence." (R., Vol. 2 p. 150).  Furthermore, petitioner does not present evidence to support his underlying claim that he lacked capacity to proceed, or that an insanity defense would have changed the outcome of the trial.  The court finds no deficiency in counsel's performance, and no prejudice resulting.

**Second**, petitioner claims that trial counsel erred in failing to object to the introduction of defendant's confession because defendant lacked mental competency during the interrogation.  The court finds no merit to this claim.  Petitioner does not present evidence that he lacked the mental capacity to waive his rights during interrogation.  As the State points out in its response, defendant's statement to the police reflects that during the police interview, he was coherent and gave appropriate responses to questions presented.  The court finds no deficiency in counsel's performance, and no prejudice resulting.

....

**Fourth**, petitioner claims that counsel was ineffective by failing to obtain a police report prior to trial.  Petitioner argues that the police originally investigated another suspect in the crime, and that counsel was ineffective in not pursuing the other suspect.  The State maintains that defense counsel had open-file discovery, and was in possession of this report as he referenced the other suspect by name at trial.

This claim is a classic example of defense counsel's strategic choice.  Such a decision is entitled to deference by the reviewing court.  Trial strategy is not deficient unless it is outside of the wide range of professionally competent assistance.  Strickland, 466 U.S. at 689-690, 104 S.Ct. at 2065-2066.  Thus, petitioner does not meet either prong of the Strickland standard.  Petitioner does not show

- 23 -

either a substandard performance or prejudice from his attorney's decision.[36]

The Louisiana Fifth Circuit Court of Appeal then denied petitioner's related writ application, holding:

> A criminal defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution. State v. Johnson, 08-1156, p. 13 (La. App. 5 Cir. 4/28/09); 9 So.3d 1084, 1092, writ denied, 09-1394 (La. 2/26/10); 28 So.3d 268. A defendant must prove both that his attorney's performance was deficient and that he was prejudiced by the deficiency, in order to establish ineffective assistance of counsel. State v. Johnson, 08-1156 at 13; 9 So.3d at 1092-93, citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); State v. Soler, 93-1042 (La. App. 5 Cir. 4/26/94); 636 So.2d 1069, 1075, writs denied, 94-0475 (La. 4/4/94); 637 So.2d 450 and 94-1361 (La. 11/4/94); 644 So.2d 1055. In order to show prejudice, a defendant must demonstrate that but for counsel's unprofessional conduct, the outcome would have been different. State v. Johnson, 08-1156 at 13; 9 So.3d at 1093, citing Strickland v. Washington, 466 U.S. at 693, 104 S.Ct. at 2068; State v. Soler, supra.
>
> After review, we find that the district court did not err in finding that relator failed to prove ineffective assistance of counsel in regard to his first and second claims. Relator failed to show that he lacked the requisite mental competence and his defense counsel should have pursued an insanity defense and objected to his confession due to his mental incompetency. While this Court did not address relator's mental competence on appeal, this Court found that the trial court was correct in finding that the relator's statement was freely and voluntarily given while he was under custody. This Court further found that relator's confession and identification of himself from the bank's surveillance photos were admissible because they

---

[36] State Rec., Vol. VII of VIII, Order dated June 23, 2011, at pp. 1-2. The court then went on to discuss other ineffective assistance claims raised by petitioner. However, that portion of the opinion is not relevant here, in that petitioner has not reasserted those remaining claims in this federal proceeding.

> were given freely and voluntarily and not under duress or intimidation. State v. Otero, 08-188 at 6, 3 So.3d at 38.
>
> In addition, we find that the trial court did not err in denying relator's ... fourth claim[] because defense counsel obtained the police report through open file discovery and presumably made a strategic choice regarding its use ....
>
> ....
>
> Based on the above, we find that the trial court did not err in denying relator's claims of ineffective assistance of counsel.[37]

Without assigning additional reasons, the Louisiana Supreme Court then likewise denied relief.[38]

With respect to petitioner's claims of ineffective assistance, he simply has not met his burden proof. As previously noted, to prevail on an ineffective assistance of counsel claim, he must demonstrate by a preponderance of evidence that the claim has merit. Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). In the instant case, as correctly noted by the state courts, petitioner presented no colorable evidence, much less a preponderance of such evidence, to establish that his counsel was ineffective for failing to pursue an insanity defense. Specifically, although he attached to his state post-conviction application evidence of a history of mental problems, such as affidavits from family members and medical records indicating that petitioner has suffered from schizophrenia in the past, that evidence hardly supports his underlying contention that an insanity defense was viable. On the contrary, under Louisiana law, it is clear that "[c]riminal responsibility is not negated merely by the existence of a mental disease or defect ...." State v. Williams, 346 So.2d 181, 186 (La. 1977); see also Morgan v. Cain, Civ. Action No. 05-6479, 2007 WL 3025056, at *7 (E.D. La. Oct. 15, 2007). A mental

---

[37] Otero, No. 11-KH-773, at pp. 4-5; State Rec., Vol. VII of VIII.

[38] State ex rel. Otero v. State, 98 So.3d 813 (La. 2012) (No. 2012-KH-0429).

disease or disorder short of legal insanity is insufficient to support an insanity defense.  Williams, 346 So.2d at 186; see also Morgan, 2007 WL 3025056, at *7; State v. Koon, 704 So.2d 756, 768 (La. 1997); State v. Weber, 364 So.2d 952, 956 (La. 1978).  Petitioner has made no allegations, much less brought forth evidence to show, that he was mentally impaired *at the time he committed the armed robbery in this case*, much less that he was so significantly impaired as to have been incapable of distinguishing between right and wrong with respect to his criminal conduct.

Moreover, this Court notes that defense counsel, Martin Regan, stated on the record prior to trial that he had thoroughly investigated mental health problems but found that they simply would not support an insanity defense:

> Your Honor, I have spoken to my client and am working with my client.  My client is able to assist me at this point, and has, with notes, etc.  There is no issue regarding that at this point.
> I have gotten several inches of material on prior medical issues with respect to my client.  I examined it.  As the Court has just seen in the hearing [prior hearing today before this court in an unrelated case], I think I'm fairly familiar with psychiatric issues.  I do not believe that my client is in a position where he cannot assist me at trial.
> The second issue is that, while he has had prior issues with respect to bipolar problems and other issues, under the current status of the law in our state, there is no Not Guilt [sic] by Reason of Insanity that's available to the defendant.  And I just want to put that on the record at this point, having examined the medical records I have, being familiar with the cases.
> I'm quite proud to say that my firm went to the U.S. Supreme Court on the FOUCHER case.  The supreme court ruled in our favor here in the State of Louisiana, and that's the law of the land.
> I'm familiar with these areas and my client is competent to go forward.

> While we would suggest he does have mental deficits there is
> no bias to the standard of either a legal defense or incompetence.[39]

In light of the foregoing, and considering the complete absence of *any* evidence indicating that petitioner was legally insane at the time he committed the crime, it is clear that petitioner has not met his burden to prove that counsel performed deficiently in failing to pursue an insanity defense or that any prejudice resulted.  See Morgan v. Cain, Civ. Action No. 05-6479, 2007 WL 3025056, at *7-8 (E.D. La. Oct. 15, 2007); see also Mack v. Warden, Louisiana State Penitentiary, Civ. Action No. 3:11-cv-0735, 2012 WL 702396, at *4 (W.D. La. Jan. 30, 2012), adopted, 2012 WL 704831 (W.D. La. Mar. 1, 2012).

The same is obviously true with respect to the claim that counsel was ineffective for failing to challenge petitioner's confession on the grounds that he was incompetent at the time the confession was made.  The transcript of the confession gives no hint whatsoever that petitioner's competency was questionable.[40]  Further, once again, petitioner has presented no evidence showing that he was incompetent at that time of the confession, and, without such evidence, he simply cannot meet his burden to prove either deficient performance or resulting prejudice.

With respect to his remaining claim, the state courts found, and the record clearly suggests, that counsel did in fact obtain the police report concerning the existence of another suspect, in that the state provided "open-file" discovery[41] and in that defense counsel attempted to

---

[39]  State Rec., Vol. II of VIII, transcript of August 7, 2007, pp. 8-10.

[40]  A copy of the transcript appears in Volume VII of the state court record.

[41]  State Rec., Vol. I of VIII, transcript of June 20, 2007, p. 49.

cross-examine a state witness concerning the existence of that suspect, even identifying the suspect by name.[42]   Moreover, petitioner has never produced any evidence, such as an affidavit from defense, in support of the contention that defense counsel had not seen the report in question.

Lastly, to the extent that petitioner is simply claiming that counsel failed to utilize the report to the greatest extent possible, that contention fares no better.   The state courts found that counsel's action in that regard was a matter of trial strategy, and it is clear that courts are not to second-guess counsel's decisions on matters of trial tactics through the distorting lens of hindsight; rather, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy. Strickland, 466 U.S. at 689; see also United States v. Jones, 287 F.3d 325, 331 (5th Cir. 2002) ("Informed strategic decisions of counsel are given a heavy measure of deference and should not be second guessed. ...   A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." (citations and quotation marks omitted)).   That presumption is particularly appropriate here, in that the report in question specifically notes that police ultimately abandoned the lead because the other suspect's mug shot did not match the surveillance photograph of the perpetrator of the robbery.[43]   Therefore, defense counsel's counsel limited use of the report was obviously successful:  in his cross-examination of Sergeant Carroll at trial, he was able to make the jury aware that there had been another suspect at one time; however, by failing to put the report

---

[42]   State Rec., Vol. II of VIII, transcript of August 7, 2007, pp. 112-14.

[43]   The police report appears in Volume VII of the state court record.

to further use, he was able to avoid revealing that the tip proved baseless.  Accordingly, in this regard, defense counsel's performance was quite effective, not the opposite.

In summary, petitioner has not demonstrated that the state court decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

### E. Habitual Offender Adjudication

Lastly, petitioner challenges the validity of his habitual offender adjudication.  In the second direct appeal, the Louisiana Fifth Circuit Court of Appeal rejected that challenge, holding:

> The defendant argues that the trial court erred by failing to find that the predicate convictions in the multiple bill of information failed to comply with the requirements of La.C.Cr.P. art 556.1.  The defendant claims that his two 1997 predicate offenses used to find him a third felony offender were not valid guilty pleas.  The defendant contends that his Boykin colloquy in both cases did not advise him of his right to cross-examine the witnesses against him pursuant to LSA-C.Cr.P. art. 556.1.
>
> The State argues in opposition that it met its burden of proving that the defendant's prior guilty pleas were informed and voluntary.  The State contends that the trial court in those cases advised the defendant of the three Boykin rights:  the right to trial by jury, the privilege against self-incrimination, and the right to confrontation.  The State argues that the right to cross-examine witnesses is incorporated in the right to confrontation.
>
> On appeal, the defendant only challenges the validity of the two 1997 guilty pleas.  When the defendant's multiple offender status is based on guilty pleas in the predicate convictions, the State has the burden of proving the existence of the defendant's guilty pleas and that the defendant was represented by counsel when the guilty pleas were taken.  State v. Jenkins, 07-586 at 4-5, 977 So.2d at 147.  See also, State v. Shelton, 621 So.2d 769, 774-77 (La. 1993).  If the State meets its burden of proof, then the burden shifts to the defendant to produce some affirmative evidence of an infringement of his rights

or a procedural irregularity.  Id.  If the defendant meets the burden, then the burden shifts back to the State to prove the constitutionality of the plea by producing a perfect transcript, which shows the defendant's waiver of his Boykin rights was voluntary, informed, and express.  Id.  If the State produces anything less than a perfect transcript, such as a guilty plea form, minute entry, or imperfect transcript, the trial judge must weigh the evidence to determine whether the defendant's prior plea was both knowing and voluntary. Id.

In State v. Smallwood, 06-2363 (La. 5/18/07), 955 So.2d 1264 and State v. Mendenhall, 06-1407 (La. 12/8/06), 944 So.2d 560, the Louisiana Supreme Court noted that the language used in the trial judge's statement, informing the defendant that the State would have to prove its case beyond a reasonable doubt and that his attorney would have the opportunity to cross-examine the State's witnesses at a trial, appeared sufficiently tailored to inform the adult defendants that they were waiving their right to confrontation and that, because they were pleading guilty, there would be no further trial.

In this case, the defendant stipulated that he was the same person who pled guilty to the predicate offenses listed in the multiple bill.  However, the defendant claims that the two 1997 predicate convictions, 96-930 and 97-2505, were infirm because he was not advised of his right to cross-examine the witness against him as required by LSA-C.Cr.P. art. 556.1(A)(3).

We find the State met the burden of proving the existence of the defendant's guilty pleas and that the defendant was represented by counsel when the guilty pleas were taken.  The State produced the "Defendant's Acknowledgement of Constitutional Rights and Waiver of Rights on Entry of a Plea of Guilty" forms signed by the defendant, defense counsel, and the trial judge, as well as the bill of information and commitment/minute entry in both cases.  The burden then shifted to the defendant to produce some affirmative evidence of an infringement of his rights or a procedural irregularity.

The defendant has failed to show either that his rights were infringed or that there was a procedural irregularity in either 1997 guilty plea.  The "Defendant's Acknowledgement of Constitutional Rights and Waiver of Rights on Entry of a Plea of Guilty" forms in both cases indicate that both the trial court and the defense attorney advised the defendant of his right to confront his accusers.  The Confrontation Clause of the Sixth Amendment to the United States Constitution, which guarantees the right of the accused in a criminal prosecution to be confronted with witnesses against him "encompasses the right physically to face those who testify against him, and the right to conduct cross-examination."  State v. Pierre,

03-1306, p. 8 (La.App. 5 Cir. 2/23/04), 869 So.2d 206, 212, <u>writ denied</u>, 04-959 (La. 10/1/04) 883 So.2d 1006.  In addition, the confrontation clause of the Louisiana Constitution Article I, Section 16, specifically affords the accused a right to cross-examine the witnesses against him.  <u>Id</u>.  The Louisiana Supreme Court has held that <u>Boykin</u> does require a "magic word formula" for a trial judge to conduct a thorough inquiry into the validity of a plea.  We find that in advising the defendant of his constitutional right to confrontation codified in LSA-C.Cr.P. art. 556.1(A)(3), the trial court sufficiently apprised the defendant of the encompassing rights to physically face those who testify against him and to conduct a cross-examination of those adverse witnesses.

In the present case, both 1997 guilty plea forms indicated that the defendant was represented by counsel, that he was advised of and waived his three <u>Boykin</u> rights, and that he was informed of the maximum total sentence he would receive based on the pre-sentence investigation.  We find that the trial court did not err in its determination that the defendant's guilty pleas in the predicate offenses were constitutionally valid.  Therefore, we find the predicate offenses were properly used to prove the defendant's status as a multiple felony offender.  Accordingly, the trial court's finding that defendant is a third felony offender is affirmed.[44]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[45]

To the extent that petitioner is merely arguing that the state courts failed to properly apply the shifting burdens of proof set forth in <u>Shelton</u> or erroneously interpreted what is required under La. Code Crim P. art. 556.1, that is not for this federal court to say.  <u>Shelton</u> and article 556.1 are matters of state law, and, as such, their correct interpretation and application are for the state courts to decide.  Here, the state courts disagreed with petitioner's interpretation.  As previously explained in this opinion, "it is not the province of a federal *habeas* court to reexamine state-court

---

[44] <u>Otero</u>, 31 So.3d at 1129-30.

[45] <u>State v. Otero</u>, No. 2010-KO-0489 (La. 2010) (No. 2010-KO-0489); State Rec., Vol. VIII of VIII.

determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)); see also

Charles v. Thaler, 629 F.3d 494, 500-01 (5th Cir. 2011) ("Under § 2254, federal habeas courts sit

to review state court misapplications of federal law.  A federal court lacks authority to rule that a

state court incorrectly interpreted its own law.  When, as here, a state court's legal conclusions are

affirmed by the highest court in that state, those conclusions *are* state law.").  Rather, federal *habeas*

*corpus* relief may be granted "only on the ground that [the petitioner] is in custody in violation of

the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  Accordingly, mere

violations of state law will not suffice.  See Engle v. Isaac, 456 U.S. 107, 119 (1983).

Moreover, if petitioner's claim is interpreted broadly as a direct challenge to the

validity of the predicate convictions, the claim is barred by Lackawanna County District Attorney

v. Cross, 532 U.S. 394 (2001).  In Lackawanna, the United States Supreme Court stated:

> [W]e hold that once a state conviction is no longer open to direct or
> collateral attack in its own right because the defendant failed to
> pursue those remedies while they were available (or because the
> defendant did so unsuccessfully), the conviction may be regarded as
> conclusively valid.  If that conviction is later used to enhance a
> criminal sentence, the defendant generally may not challenge the
> enhanced sentence through a petition under § 2254 on the ground that
> the prior conviction was unconstitutionally obtained.

Id. at 403-04 (citation omitted).  Because petitioner's predicate convictions are no longer open to

direct or collateral attack, Lackawanna prohibits him from challenging his current enhanced sentence

in this proceeding on the ground that the predicate convictions were illegal.  See Silvo v. Cain, Civ.

Action No. 09-3692, 2009 WL 3151166, at *2 (E.D. La. Sept. 30, 2009); Johnson v. Hubert, Civ.

Action No. 08-688, 2008 WL 1746727, at *3 (E.D. La. Apr. 11, 2008).[46]

---

[46]   The Supreme Court noted that the Lackawanna prohibition would not apply when it is argued
that the predicate conviction was unconstitutional because it was obtained where there was a failure

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Julio Otero be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[47]

New Orleans, Louisiana, this twelfth day of August, 2013.



**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

to appoint counsel as required by Gideon v. Wainwright, 372 U.S. 335 (1963).  Lackawanna, 532 U.S. at 404.  Here, petitioner was represented in the prior proceedings.

The Supreme Court further noted that the Lackawanna prohibition may not apply if the federal *habeas corpus* petition is, effectively, the first and only forum available for review of the challenge to the prior convictions.  Id. at 405; see also Flot v. Cain, Civ. Action No. 05-6439, 2007 WL 2491388, at *9 n.33 (E.D. La. Aug. 30, 2007).  That potential exception is also inapplicable here, in that the validity of each of the predicate convictions was subject to challenge in the state courts.

[47] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.